UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK A. FISCHER,

        **Plaintiff,**

v.

                  **18-CV-1467**

COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 20.  Mark A. Fischer ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 12, 18.  For the following reasons, Plaintiff's motion (Dkt. No. 12) is denied, and the Commissioner's motion (Dkt. No. 18) is granted.

## BACKGROUND

On February 9, 2015, Plaintiff filed for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability beginning on November 1, 2012, due to bulging discs in his neck and lower back, pain in his left hip and back, a torn

rotator cuff, sleep apnea, and asthma. Tr. at 31, 268-69, 377, 381. 435.[1] Plaintiff's application was denied at the initial level and he requested review. Tr. at 270-89. Administrative Law Judge Roseanne M. Dummer ("the ALJ") conducted a hearing on August 23, 2017. Tr. at 226. Plaintiff, who was represented by counsel, testified as did an impartial vocational expert. Tr. at 226-66. On September 8, 2017, the ALJ issued a decision in which she found that Plaintiff was not disabled and therefore, not eligible for benefits. Tr. at 28-49. The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner. Tr. at 1-7. Plaintiff thereafter commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. See Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. §

---

[1]Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above.  *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 1, 2012, the alleged onset date.  Tr. at 33.  At step two, she found that Plaintiff had the following severe impairments: osteoarthritis, left thumb osteoarthritis, opiate dependence, obesity, cervical spine degenerative disc disease, and lumbar spine bulge with diffuse degenerative disc disease. Tr. at 33-35.[2]  The ALJ noted that Plaintiff's right shoulder torn rotator cuff, asthma, Chronic Obstructive Pulmonary Disease, low testosterone, osteoarthritis of the left hip, contusion of the left hip, history of alcohol abuse, left foot pain, heart troubles, and major depressive disorder were not severe.  Tr. at 33-35.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 1.02 (Musculoskeletal System, Major Dysfunction of a Joint), Listing 1.04 (Disorders of the Spine), as well as Social Security Ruling 02-1p (Obesity).  Tr. at 35-36.

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized at length in the papers.

Next, the ALJ found that Plaintiff retained the RFC to perform a range of light work as defined by 20 C.F.R. §§ 404.1567 and 416.967(b).  Specifically:

> He could lift/carry twenty pounds occasionally and ten pounds frequently.  He should avoid work hazards (e.g. no dangerous moving machinery, unprotected heights).  The claimant is right-hand dominant, and he could perform work requiring frequent (no continuous[,] repetitive) gross manipulation of the left, non-dominant upper extremity due to a thumb problem.  The claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl.  He should avoid concentrated exposure to pulmonary irritants, fumes, odors, dusts, gasses and poor ventilation.  The claimant would need the option to change positions, sit/stand on the hour at the workstation.  The claimant could tolerate brief and superficial contact with others (no in-depth conversations involving negotiation, arbitration, or complex instructions/interactions).

Tr. at 36.

Continuing to the fourth step, the ALJ found that Plaintiff was able to perform his past relevant work as a lens polisher and fishing rod assembler.  Tr. at 47.  Accordingly, concluded the ALJ, Plaintiff was not under a disability from November 1, 2012, through the date of her decision, September 8, 2017.  Tr. at 48.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 12, 18.  Plaintiff contends that the RFC is a product of the ALJ's lay opinion and is not supported by substantial evidence.  Dkt. No. 12-1, pp. 18-26.  The Commissioner contends that the ALJ's RFC finding is supported by substantial evidence, including the treatment records from Plaintiff's medical providers.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err and that the RFC was substantially supported.

**The ALJ's Assessment of the Medical Opinions**

Plaintiff alleges that the ALJ arbitrarily "substituted [her] own judgment for competent medical opinion" in formulating the physical RFC. Dkt. No. 12-1, pp. 19. This Court does not agree. As an initial matter, it is inaccurate to state that the ALJ outright rejected all of the medical opinions in her decision. Rather, the ALJ assigned varying degrees of weight to the opinions based on the consistency of the opinion with the record as a whole. For example, the ALJ gave "some weight to the opinion of consultative examiner Dr. Hongbiao Liu that Plaintiff had a "mild to moderate limitation" in the ability to walk, bend, and kneel for prolonged periods of time, and that he should avoid dust and other irritants to limit asthma attacks. Tr. at 45, 753. Dr. Liu's limitations were incorporated into the RFC, limiting Plaintiff to light work with only occasional climbing, stooping, kneeling, crouching, and crawling; incorporating an hourly sit/stand option at the workstation, and the provision to avoid exposure to pulmonary irritants, fumes, odors, dusts, gasses and poor ventilation. Tr. at 36.

The ALJ gave "limited weight" to the opinion of Plaintiff's treating physician, Dr. Ayesha Z. Butt (Tr. at 488-727) that in 2013 and 2014, Plaintiff was "very limited" in the ability to stand, and "moderately limited" in the ability to walk, sit, lift/carry, push, pull, bend, use his hands, or climb stairs (Tr. at 574-75; 603-04; 619-20). In so doing, the ALJ reasoned that: Dr. Butt's assessments "were provided based largely on the claimant's self-reports[;]" Dr. Butt was "possibly sympathetic to financial issues for state benefits;" the doctor's objective findings did not corroborate work-precluding limitations, and she only recommended routine conservative care for Plaintiff's condition. Tr. at 45. The ALJ

likewise gave only "limited weight" to the June 2016 opinion from Dr. Donald E. Gullickson, D.O., an emergency room doctor, that Plaintiff has "significant impairment from his low back pain," which caused him to fall from a ladder onto the grass. The ALJ noted that Plaintiff had never been a candidate for surgery, despite his complaints. Tr. at 46. She also acknowledged that Plaintiff "inconsistently followed medical advice and medication management[,]" and as a result experienced an "exacerbation of symptoms, such as increased back pain and breathing issues." Tr. at 46. For example, Plaintiff reported that he had stopped taking Hydrocodone, was seeking a new pain management physician, and had been drinking "a few beers a day." Tr. at 46. Plaintiff apparently ignored his doctors' advice that he stop smoking, improve his diet, and begin to exercise. Tr. at 43-46.

As a matter of law, an ALJ may consider whether a claimant has complied with prescribed treatment when assessing allegations of disabling symptoms. *Turner v. Berryhill*, No. 1:16-CV-00405 (MAT), 2017 WL 4285902, at *3 (W.D.N.Y. Sept. 27, 2017). And "[w]hile conservative treatment alone is not grounds for an adverse credibility finding," *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), "the ALJ may take it into account along with other factors." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646-47 (S.D.N.Y. 2019), *appeal dismissed* (May 31, 2019); *see also Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (the ALJ was permitted to weigh a claimant's "conservative treatment" regimen in determining claimant's credibility); *Dixon v. Berryhill*, 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record.") (citations

8

and quotation marks omitted) (collecting cases).  Accordingly, the ALJ did not err in considering these factors in determining whether Plaintiff's back pain was disabling or otherwise caused him to fall, as Dr. Gullickson opined.  It bears noting here that although the ALJ rejected Dr. Gullickson's opinion, she nonetheless included a limitation that Plaintiff should not work at unprotected heights.  Tr. at 36.[3]

The ALJ cited to Plaintiff's testimony that he was able to cook, clean, do laundry, shop, use a computer to access social media, use public transportation, perform home maintenance, and that he had, in the past, cared for his elderly mother.  Tr. at 44-45. These activities of daily living are consistent with light work and it was permissible for the ALJ to consider them in assessing Plaintiff's RFC.  20 C.F.R. §§ 404.1529, 416.929; see Cruz v. Colvin, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017) (holding that an ALJ may discount a treating physician's opinion that a claimant is greatly restricted based on that claimant's activities of daily living); Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ correctly found that claimant was not disabled because he was able to care for his one-year-old child, change diapers, vacuum, wash dishes, occasionally drive, watch television, read, and use the computer).

---

[3] Plaintiff argues that that the opinions of Drs. Liu, Butt, and Gullickson are all "stale" because Plaintiff's left hand/thumb and back condition worsened after the last opinion was rendered.  This argument is unavailing.  As noted, the ALJ did not rely on Dr. Butt or Dr. Gullickson, and gave good reasons for basically rejecting those opinions, a decision that Plaintiff has not challenged.  Second, the ALJ specifically found that Plaintiff had limitations in the use of his left hand and incorporated those limitations into the RFC.  Tr. at 36, 44, 46.  Moreover, the record contains findings that post-date Dr. Liu's April 2015 opinion that do not differ materially from his conclusions that Plaintiff had a normal gait, full range of motion except in his lumbar spine, and 5/5 motor strength.  Tr. at 752, 804, 827, 854, 914, 925, 929, 937.  The Second Circuit Court of Appeals has determined that opinion evidence is not legally stale when later treatment notes are substantially the same as the evidence in question.  Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016).

Based on the foregoing, this Court finds that the ALJ did not err in weighing the medical opinions, and assigning more weight to certain opinions than others. It is, in fact, the role of the ALJ to compare specific medical opinions against the record as a whole.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  The law is clear that an ALJ's RFC finding does not need to be based on a particular medical opinion or medical source statement.  *Monroe v. Berryhill*, 676 F. App'x 5, 9 (2d Cir. 2017); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 1013) (reasoning that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in h[er] decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole").  Moreover, "the ultimate finding of whether a claimant is disabled and cannot work . . . [is] reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotations and citations omitted).

Because the ALJ did not, in fact, reject all of the medical opinions in the record as Plaintiff has alleged, it cannot be said that there was an "obvious gap" in the record, which the ALJ was duty-bound to develop.  *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (holding that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (Where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a medical source statement or formal medical opinion is not necessarily required) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir.

10

2013) (summary order).  Accordingly, the ALJ did not commit reversible error with respect to the record.

Lastly, Plaintiff argues that the ALJ ignored that he is unable to ambulate without a cane.  Dkt. No. 12-1, p. 25.  However, the ALJ properly found that no medical source had prescribed the cane.  Tr. at 37, 46.  In fact, Plaintiff testified at his hearing that the cane was not prescribed by a doctor.  Tr. at 238.  Accordingly, this is not a basis for remand to the Social Security Administration.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**."  *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is hereby DENIED, and the Commissioner's motion for

11

Judgment on the pleadings (Dkt. No. 18) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
August 14, 2020

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**